Roosevelt WARD, Sr., and William Ward and Roosevelt Ward, Jr., as the Guardians of Roosevelt Ward, Sr. Appellant,

v.

ST. MARY MEDICAL CENTER OF GARY, Jane Doe, and/or John Doe, whose true and Christian names are unknown and Sonja Tarnow, who are employees and/or agents of the Defendants, St. Mary Medical Center of Gary and George D. Smalls, M.D., Appellee.

No. 45S03–9506–CV–624.

Supreme Court of Indiana.

Dec. 12, 1995.

John M. Kopack, Merrillville, for appellant.

Randall J. Nye, Hammond, for appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

This case requires us to reaffirm an established tenet of our state's jurisprudence: a jury's verdict may not be impeached by testimony of the jurors who returned it.

### Facts

Roosevelt Ward, Sr. (Ward) filed a complaint alleging malpractice against St. Mary Medical Center (St. Mary) on September 19, 1992, after suffering a tear in his bladder during a needle biopsy performed at St. Mary.

At the trial, during deliberations, the jury sent a note to the trial court requesting to make a statement before or after the verdict was read. Neither counsel objected to this request, and the trial court thereafter granted the request. The jury then returned a verdict in favor of Ward, and awarded damages in the amount of $226,795.00. After polling the jury, the trial court entered judgment on the jury's verdict.

The trial court then permitted the jury to make its requested statement. The jury stated:

> We, the Jury find no negligence in the standard of care given to Mr. Roosevelt Ward, Sr., but do find a lack of aggressive care given to Mr. Roosevelt Ward, Sr., during the critical time period.... And that is what the Jury—this is very hard for a Jury to come up with. That's what we came up with, Your Honor.

After the jury made this statement, the trial court granted a mistrial purportedly because the statement of the jury revealed

that the jury misapplied the law. Ward appealed the trial court's decision, claiming that in Indiana, a jury's verdict may not be impeached by a juror's testimony. The Court of Appeals, in affirming the trial court's decision to grant a mistrial, agreed with this general proposition, but held that in these special circumstances where the policy reasons underlying this rule did not apply, an exception to the rule was warranted. *Ward v. St. Mary Medical Center of Gary* (1995), Ind.App., 645 N.E.2d 1130. The court also held that the mistrial in that case was a final, appealable judgment. *Id.* at 1133.

## Discussion

■ We agree with the Court of Appeals that the mistrial order in this case—where the mistrial was ordered after the jury returned its verdict—was a final, appealable judgment. We do not agree with the Court of Appeals, however, that an exception to the rule that jurors may not impeach their verdict is appropriate in this case.

■ It has long been established in Indiana that a jury's verdict may not be impeached by the testimony of the jurors who returned it. Our court has had many occasions to reaffirm this principle. *See Karlos v. State* (1985), Ind., 476 N.E.2d 819; *Bryant v. State,* (1979), 270 Ind. 268, 385 N.E.2d 415; *Stinson v. State* (1974), 262 Ind. 189, 313 N.E.2d 699; and *Wilson v. State* (1970), 253 Ind. 585, 255 N.E.2d 817. In addition, the Court of Appeals has addressed the issue several times and adhered to this principle. *See Knight v. Parke* (1992), Ind. App., 595 N.E.2d 280; *Wagner v. Riley* (1986), Ind.App., 499 N.E.2d 1155; *Stauffer v. Lothamer* (1982), Ind.App., 419 N.E.2d 203; *State v. Normandy Farms* (1980), Ind. App., 413 N.E.2d 268; and *Jessop v. Werner Transportation* (1970), 147 Ind.App. 408, 261 N.E.2d 598.

The policy reasons most often cited for supporting this rule are that (1) there would be no reasonable end to litigation, (2) jurors would be harassed by both sides of litigation, and (3) an unsettled state of affairs would result. *Stauffer,* 419 N.E.2d at 218 (citing *Stinson,* 313 N.E.2d at 704). The following

statement by our court underscores the importance of this general rule:

> If this Court were to permit individual jurors to make affidavits or give testimony disclosing . . . their version of the reasons for rendering a particular verdict, there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation. . . . Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries.

*Bryant v. State,* 385 N.E.2d at 422 (quoting *Stinson,* 313 N.E.2d at 704). However, the Court of Appeals found it appropriate to carve out an exception to the rule here, concluding that the policy reasons behind the general rule did not apply in this case. 645 N.E.2d at 1134.

■ First, the court reasoned that the policy concern of jury harassment was not an issue because the jury voluntarily requested to make the statement. 645 N.E.2d at 1134. However, even though the jury volunteered its statement and jury harassment did not appear to be a concern, we believe that allowing the jury's statement to impeach its own verdict would lead to other problems meant to be avoided by the general rule. In an era of intense media interest in jurors' views—not to mention publishing opportunities for them—voluntary jury statements come fast and furious. Trial courts and appellate courts would quickly find themselves having to distinguish between voluntary juror statements of which they will take cognizance and those they will not. The Court of Appeals has previously declined to carve out an exception to this rule when a juror voluntarily offered the impeaching testimony. *Stauffer,* 419 N.E.2d 203. In *Stauffer,* defendant Stauffer appealed a judgment against him based in part upon the questionable propriety of the jury's verdict. He attempted to support his position with the testimony of a juror who voluntarily approached Stauffer's counsel. Stauffer contended that since the juror approached him voluntarily, the court should carve out an exception to the general rule that a verdict may not be impeached by the testimony of the jurors who returned it. The court disagreed and reasoned that an

exception—even in limited circumstances where a juror volunteered the testimony—would perpetuate unending litigation where "no jury verdict would ever be lasting or conclusive." *Id.* at 218 (quoting *Jessop,* 261 N.E.2d at 601). We agree with the *Stauffer* court that the voluntariness of a juror's impeaching statement in no way undermines the verdict.

The Court of Appeals also distinguished this case from those supporting the general rule in that the jury was still impaneled at the time it made its impeaching statement. 645 N.E.2d at 1134. Again, we do not believe that this factor is significant enough to warrant granting an exception. In fact, this court has previously stated that a jury's verdict may not be impeached by testimony of the jurors, even where the jury delivers the statement while it is still impaneled. *Karlos,* 476 N.E.2d 819. In *Karlos,* the defendant requested a post-verdict interrogation of the jurors, while they were still impaneled, to determine whether they had been exposed to publicity surrounding the trial. The court refused to deviate from the rule and held that the jury would not be permitted to impeach its own verdict. 476 N.E.2d at 824. We believe that decision is controlling here.

Having carefully reviewed the analysis of the Court of Appeals that an exception to our firmly established rule is warranted, we remain convinced that to permit the propriety of a verdict to be challenged with statements made by the jurors who returned it—even in a case like this one—would foster unending litigation, erode the finality of the verdict, and result in an unsettled state of affairs. That is precisely what the rule was intended to prevent in the first place.

More broadly, the inviolate right to a jury trial provided by section 20 of the Indiana Bill of Rights is eroded if a trial court judge can employ a jury's explanatory statement to vacate its verdict. This we cannot permit.

### Conclusion

The statement by the jurors in this case should not have been permitted to impeach the jury's verdict, and therefore, the trial court abused its discretion by granting a mistrial. We remand this case to the trial court with instructions to vacate its order of mistrial and reinstate its judgment on the verdict.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

I would affirm the trial judge's action in granting a mistrial in this case and would remand for a new trial. The addendum to the verdict which causes the problem in this case was delivered by and for the jury acting as a body, in open court, and with the formality normally attendant to the return of a verdict. It was not the product of interrogation by the trial judge or counsel for the parties. It was presented with court authorization which had preceded the bringing of the jury into open court to return its verdict. The court's authorization undoubtedly participated in and facilitated the jury in finally concluding its deliberations. The addendum was presented before the jury was discharged and thus while the jury was yet under oath and sworn to well and truly try the case between the parties. The addendum was not, I think, much different from those words and statements which juries at times add to the printed verdict forms supplied for their convenience by the Court. Such words and statements form part of the verdict itself. I agree with the majority that juries should not be encouraged to make such statements, during or after trial, explanatory or otherwise. It is surely within the province of a jury in resolving issues of fact before them to go beyond simply "for the plaintiff," "for the defendant," "guilty," and "not guilty." When the court is faced with a jury verdict which reflects free-lancing as did the one in this case, it is up to the court to decide whether the verdict as a whole has a reasonable intendment and can be given a reasonable construction, or cannot be so considered and out of necessity must be avoided. *Daniels v. McGinnis* (1884), 97 Ind. 549. Under the unusual circumstances presented in this case, the two parts of the verdict resolved material issues of fact in diametri-

cally opposed ways, and both parts were supported by the entire jury. This looks like necessity requiring avoidance. I find that it was within the discretion of the trial judge to declare a mistrial, rather than returning the jury to the jury room for further deliberations. Ind.Code Ann. § 34–1–21–9 (West 1983); *see also* Ind. Trial R. 50(C).