**James R. GRIFFIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–9909–CR–647.**

Court of Appeals of Indiana.

Sept. 7, 2000.

Rehearing Denied Nov. 14, 2000.

Brent Westerfeld, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, J.

### *STATEMENT OF CASE*

Appellant–Defendant James R. Griffin (Griffin) appeals the denial of his motion to correct errors and his conviction of carjacking, a Class B felony, Ind.Code § 35–42–5–2.

We affirm.

### *ISSUES*

Griffin raises four issues on appeal, which we restate as:

1. Whether the trial court erred when it denied Griffin's motion to correct errors with respect to the conduct of the alternate juror.

2. Whether the trial court erred by excluding testimony offered by Griffin to impeach a third party's denial during trial of making a confession to the carjacking.

3. Whether the trial court erred when it denied Griffin's motion to correct errors with respect to newly discovered evidence.

4. Whether the evidence is sufficient to support Griffin's conviction of carjacking.

## FACTS AND PROCEDURAL HISTORY

On March 5, 1997, at approximately 2:45 p.m., Clifford Wright (Wright) was driving his 1986 Chevy Cavalier and picked up a woman at the corner of Massachusetts Avenue and College Avenue in Marion County, Indiana. The woman identified herself as Patricia Griffin (Patricia) and asked Wright to take her to her home on Gale Street. Wright and Patricia decided to go on a date that night and Patricia gave Wright her phone number. At approximately 5:30 p.m., Wright attempted to telephone Patricia, however, she was not home. He then decided to stop by the residence on Gale Street where he had dropped her off.

When Wright knocked on the front door to the residence, he was instructed to go around to the back door. Patricia was not present at the house, but Wright was invited in by a man who identified himself as James, and by a woman who identified herself as Twyanna. The group talked for twenty minutes and at some point in the conversation, James left the room and then returned a few minutes later. On his return, Twyanna asked James if he got his pistol. Twyanna, James and Wright then got into Wright's vehicle and left the residence. After driving for about two minutes, Wright was forced to hand over currency in the amount of $33.00, his billfold, and the keys to his vehicle. Wright was then told to exit the vehicle. Wright called the police and reported the incident.

The Police provided Wright with a six person photo array in which Wright was able to identify Griffin as the person named James. Following Wright's identification of Griffin, the State filed an information on March 24, 1997, alleging that Griffin committed carjacking, a Class B felony, Ind.Code § 35–42–5–2. A jury trial was held on February 25, 1999.

The jury found Griffin guilty of carjacking. On April 20, 1999, a sentencing hearing was held. After hearing evidence, the trial court sentenced Griffin to a six-year sentence, three years executed, three years suspended and two years on probation.

On May 20, 1999, Griffin filed a Motion to Correct Errors Regarding Juror Misconduct and Newly Discovered Evidence and Request for Expedited Hearing. In support of this motion, Griffin submitted affidavits of jurors and a newly discovered witness.

On July 29, 1999, the trial court issued an order denying Griffin's motion to correct errors. This appeal of the trial court's denial of the motion to correct errors and of Griffin's conviction then ensued.

## DISCUSSION AND DECISION

### I. Alternate Juror Conduct

After concluding the evidentiary portion of Griffin's trial, the trial court gave the final jury instructions. Final Jury instruction 23 states as follows:

> You are instructed that the alternate juror who has been selected in this case and who has been present during the entire course of this trial will be allowed back into the jury room with the regular 12 jurors under strict instruction that the alternate juror is not to participate in any way in the deliberations of the regular jury in this case. In the event that the alternate juror is needed to replace a regular member of the jury, the alternate will be called back into the courtroom and specifically advised that the alternate may then participate in the deliberations. Until such time the alternate may not in any way take part in the deliberations of the jury in this case.

(R. 431–432). The jury returned from deliberations finding Griffin guilty of carjacking. After trial, Griffin filed a motion to correct errors alleging that the jury was improperly influenced by the alternate juror and supported this contention with several jurors' affidavits stating that the alternate juror participated in deliberations. On appeal, Griffin alleges that the trial court erred in denying his motion to cor-

rect errors based on the alternate juror's participation in the jury deliberations. We are unable to reach the merits of Griffin's argument because we find that the juror affidavits are not admissible under Ind.Evidence R. 606(b)(3) to impeach the jury verdict.

 Indiana has followed a long-standing rule that the affidavit or testimony of jurors will not be received to impeach their verdict, whether the jurors' statements be reported first or second hand. *Knight v. Parke*, 595 N.E.2d 280, 280 (Ind.Ct.App.1992)(additional citations omitted). Our supreme court has stated the following policy reason for the rule:

> If this Court were to permit individual jurors to make affidavits or give testimony disclosing ... their version of the reasons for rendering a particular verdict, there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation.... Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries.

*Ward v. St. Mary Medical Center of Gary*, 658 N.E.2d 893, 894 (Ind.1995). Indiana case law has recognized one exception to this rule for situations involving the jury's exposure to extraneous influence. *Id.* In 1994, Rule 606 of the Indiana Rules of Evidence was adopted and states the following with respect to the competence of a juror as a witness:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental process in connection therewith, except that a juror may testify (1) to drug or alcohol use by any juror, (2) on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or *(3) whether any outside influence was improperly brought to bear upon any juror.* A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying may not be received for these purposes.

Evid.R. 606(b) (emphasis added). Since its adoption, no reported Indiana cases have addressed the specific exceptions within Evid.R. 606(b).

In the present case the issue is whether an alternate juror's conduct during jury deliberations amounts to an outside influence as contemplated by Evid.R. 606(b)(3). Initially we note that when our supreme court determined that the alternate juror could remain in the jury room during deliberations it found that, "an alternate juror is in every respect a juror." *Johnson v. State*, 369 N.E.2d 623, 625, 267 Ind. 256 (1977).

 In the present case, the jury, as well as the alternate juror, were instructed that the alternate juror was not to participate in the jury deliberations. A presumption exists that not only did the alternate juror not participate in the jury deliberations, but also that the members of the jury would have followed the trial court's instruction and disregarded any comments made by the alternate juror. *See, Lawson v. State*, 664 N.E.2d 773, 777 (Ind.Ct.App.1996); *Taylor v. State*, 677 N.E.2d 56, 64 (Ind.Ct.App.1997), *trans. denied.*

 In light of the long standing rule that a jury verdict may not be impeached by the affidavits of the jurors, the public policy concerns over finality of the jury verdict, and the presumption that the jurors followed the trial court's instructions, we do not find that the alternate juror's alleged participation in deliberations is an outside influence as contemplated by Evid.R. 606(b)(3). Since the affidavits of the jurors are not admissible, no evidence of the alternate juror's conduct exists with

which to impeach the verdict. We therefore find that the trial court did not err when it denied Griffin's motion to correct errors with respect to the conduct of the alternate juror.

## II. *Exclusion of Youngcourt's Testimony.*

On appeal Griffin alleges his constitutional rights to a fair trial and to present evidence of his defense were violated when the trial court excluded Lorinda Youngcourt's (Youngcourt) testimony that William Dulin (Dulin) confessed to the crime for which Griffin was convicted. Specifically, Griffin argues that Youngcourt's testimony was either admissible as a statement against interest exception to hearsay or was not hearsay and admissible under Evid. R. 613(b).

■ Hearsay is generally defined as an out of court statement offered to prove the truth of the matter asserted and is not generally admissible as evidence. Evid.R. 801(c) and 802. Hearsay testimony is nevertheless admissible under the statement against interest exception if the declarant is unavailable as a witness and the statement, at the time it was made, was "so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Swanigan v. State,* 720 N.E.2d 1257, 1259 (Ind.Ct.App.1999)(citing Evid.R 804(b)(3)).

A statement does not fall within the hearsay rules "if the declarant testifies at the trial or hearing and is subjected to cross examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition." Evid.R. 801(d)(1). Further, "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Evid.R. 613.

At trial, after calling Dulin as a witness, Griffin's trial counsel asked Dulin if he confessed that he had committed the carjacking to Youngcourt. Dulin denied making the confession. Griffin's trial counsel then called Youngcourt as a witness and asked her if Dulin had confessed to her that he had committed the carjacking. The State objected to Youngcourt's answer to the question, alleging that any answer would be inadmissible as hearsay. After argument on the issue, the trial court sustained the objection and Griffin made an offer to prove wherein Youngcourt testified that Dulin confessed to committing the crime.

■ A trial court is accorded broad discretion in determining the admissibility of evidence. *Reed v. State,* 693 N.E.2d 988, 990 (Ind.Ct.App.1998). Therefore, we review the trial court's decision on the admissibility of evidence for an abuse of discretion. *Geiger v. State,* 721 N.E.2d 891, 898 (Ind.Ct.App.1999). Even if the trial court erroneously excludes admissible evidence, we will not reverse a defendant's conviction unless his substantial rights have been affected. *Reed,* 693 N.E.2d. at 990.

■ Griffin first argues that Youngcourt's testimony should have been admitted as an exception to hearsay because it was a statement against interest of an unavailable witness. It is incumbent on the party asserting the hearsay exception to demonstrate that the witness is unavailable. *Crider v. Crider,* 635 N.E.2d 204, 214 (Ind.Ct.App.1994). The Record reflects that Griffin called Dulin as a witness, that the State granted Dulin immunity, and that the Griffin had an opportunity to question Dulin. Griffin failed to show that Dulin was unavailable within the meaning of Evid.R 804 and therefore failed

to fulfill his burden in showing that Youngcourt's testimony was admissible as an exception to hearsay as a statement against interest of an unavailable witness.

■ Griffin also alleges that Youngcourt's testimony is admissible under Evid.R 613(b) as extrinsic evidence of a prior inconsistent statement of a witness. The State concedes that, "it does appear that Defendant [Griffin] should have been allowed to impeach Dulin's testimony using extrinsic evidence, [however] any error concerning [his] ability to impeach Dulin's testimony was harmless and does not constitute a ground for reversal." Appellee's Brief p. 12. Youngcourt's testimony regarding Dulin's prior confession was admissible because Dulin was given the opportunity to explain or deny the statement and the State was given the opportunity to cross examine Dulin on the statement.

■ The erroneous admission or exclusion of evidence is deemed harmless when its probable impact on the jury, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. Ind.Trial Rule 61; *Swanigan v. State,* 720 N.E.2d 1257, 1260 (Ind.Ct.App.1999). Further, any error associated with the admission or exclusion of evidence is harmless if the same or similar evidence was submitted without objection. *State v. Edgman,* 447 N.E.2d 1091, 1104 (Ind.Ct.App.1983).

■ In the present case, Youngcourt's testimony impeaching Dulin would have had a negligible effect, if any, on the jury's determination of guilt in light of the substantial independent evidence presented at trial. At trial and without objection, Patricia testified that Dulin told her that he committed the car jacking and that Dulin showed her Wright's car. However, Dulin testified that he was not involved in the crime for which Griffin was charged. Indianapolis Police Department Detective Barry Jefferies testified that after viewing 500 photos in which he did not identify anyone, Wright identified Griffin in a six person photo array. Wright again identified Griffin as the perpetrator of the crime at trial. The jury had testimony before it that Dulin was the perpetrator of the crime and chose to reject this version of the facts, finding that Griffin committed the instant offense. Although the trial court erred in excluding Youngcourt's testimony impeaching Dulin, the probable impact of Youngcourt's testimony on the jury, in light of Patricia's testimony and all the other evidence in the case, is sufficiently minor so as not to affect the substantial rights of Griffin. The trial court's exclusion of Youngcourt's testimony was harmless error.

### III. *Newly Discovered Evidence*

On appeal, Griffin also alleges that the trial court erred when it denied his motion to correct errors regarding newly discovered evidence. Specifically, Griffin argues that a newly discovered witness to the crime is evidence demonstrating Griffin's innocence and necessitating a new trial. We disagree.

■ Under T.R. 59, if the trial court determines that newly discovered evidence exists that was not capable of discovery prior to trial with reasonable diligence, and such evidence resulted in error, then the trial court shall take such action as will cure the error. Initially we note, "[m]otions for a new trial predicated upon newly-discovered evidence are viewed with disfavor." *Denney v. State,* 695 N.E.2d 90, 93 (Ind.1998). Our supreme court has recently stated that in order to obtain a new trial based on newly discovered evidence, the defendant must show that:

> (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result.

*Kahlenbeck v. State*, 719 N.E.2d 1213, 1218 (Ind.1999). The defendant has the burden of showing that the newly discovered evidence meets all nine prerequisites for a new trial. *Denney*, 695 N.E.2d at 93. The denial of a motion for new trial predicated on newly discovered evidence is a discretionary ruling by the trial court which is reviewed deferentially. *McIntyre v. State*, 717 N.E.2d 114, 128 (Ind.1999), *reh'g denied.*

 In the present case, Griffin contends that the newly discovered witness was not previously obtainable, that her testimony is worthy of credit, and it will probably produce a different result. In ruling on the motion to correct errors, the trial court found that the evidence offered by Griffin was discoverable upon due diligence prior to trial, and therefore its post trial discovery does not warrant a new trial.[1]

 A motion for new trial based on newly discovered evidence is subject to a hostile inference of want of due diligence in the absence of a clear showing to the contrary. *Denney*, 695 N.E.2d at 93 (citing *Tyson v. State*, 626 N.E.2d 482, 485 (Ind.Ct.App.1993)). A party may not rest upon its abstract conclusion about or assertion of its exercise of due diligence but must give a particularized showing that all methods of discovery reasonably available to counsel were used and could not uncover the newly found information. *Id.*

In order for Griffin to obtain a new trial, he is required to give a particularized showing that he could not have uncovered the newly found information. *See Id.* He has not done this. In the newly discovered witness's affidavit, she states that she did not tell anyone about her presence at the crime scene until after Griffin was convicted. The crime in the instant case originated at Griffin's sister's residence. Griffin made no showing that he attempted to obtain from his sister the names of the individuals that may have been at her house at the time of the crime. Further, Griffin has failed to show how the means of discovery failed to reveal that this witness to the crime existed. Griffin attempts to rest his search for this witness merely on the testimony of an investigating officer that the officer was unable to locate the woman, however Griffin must show how his efforts, through the tools of discovery failed. *See Id.* This he has not done.

In order to succeed in his motion to correct errors, Griffin was required to show that due diligence was used to discover the evidence in time for trial and that his efforts failed. On appeal Griffin is met with a higher burden of showing that the trial court abused its discretion when it ruled that due diligence would have revealed the information prior to trial. Griffin has not fulfilled his burden. The trial court's denial of Griffin's motion to correct errors with respect to the newly discovered evidence is affirmed.

### IV. *Sufficiency of Evidence*

Griffin's fourth issue raised on appeal is whether sufficient evidence exists to support his conviction of carjacking. Specifically, Griffin argues that the victim's testimony is incredibly dubious and that the State did not show that Griffin used force or a threat of force when taking the car. We are not persuaded by Griffin's arguments.

 When reviewing claims for sufficiency of evidence, we do not reweigh evidence or judge the credibility of witnesses. *Macklin v. State*, 701 N.E.2d 1247, 1250–1251 (Ind.Ct.App.1998). We look to the evidence and the reasonable

---

1. In the trial court's order denying the motion to correct errors, the trial court states, "The Court finds that the evidence offered by the defense was discoverable upon due diligence prior to trial and therefore its discovery does [sic] warrant a new trial." (R. 190). The trial court subsequently denied the motion to correct errors in full. We therefore understand the trial court's ruling on the newly discovered evidence to contain a typographical error wherein the word "not" was omitted.

inferences drawn therefrom that support the verdict. *Id.* A conviction will be affirmed if evidence of probative value exists from which the fact-finder could find the defendant guilty beyond a reasonable doubt. *Id.*

In order to convict Griffin of carjacking, the State is required to show beyond a reasonable doubt that Griffin knowingly or intentionally took a motor vehicle from Wright by using or threatening the use of force or by putting any person in fear. *See* Ind.Code § 35–42–5–2.

Griffin alleges the testimony of Wright falls within the incredible dubiosity rule. "Under this rule, a court will impinge on the jury's responsibility to judge the credibility of the witness only when it has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Newson v. State,* 721 N.E.2d 237, 240 (Ind.1999)(additional citations omitted). In *White v. State,* we found:

'When a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed.' However ... '[a]pplication of this rule is limited to cases ... where a *sole* witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's [defendant's] guilt.'

706 N.E.2d 1078, 1079 (Ind.1999) (citations omitted).

▮ Griffin's conviction is based on the testimony of the victim, Wright. Wright identified Griffin in a photo array three days after the carjacking took place. Wright subsequently identified Griffin at trial. Griffin does not identify any contradiction within Wright's testimony. Wright's testimony is not inherently contradictory. Lacking any contradiction, Wright's testimony is not subject to the incredible dubiosity rule. The uncorroborated testimony of one witness is sufficient to sustain a conviction on appeal.

*Toney v. State,* 715 N.E.2d 367, 368 (Ind. 1999). Wright's identification of Griffin is not incredibly dubious and is sufficient to support the conclusion that Griffin was the perpetrator of the crime.

▮ Griffin also alleges that the State failed to establish that the car was taken by force or threat of force or by placing Wright in fear. Wright testified that at the time he, Griffin and Twyanna got in his car, Griffin had a pistol. Wright stated that after about two minutes of driving, Twyanna asked him, "Do you understand you're being set up." (R. 291). Wright testified that he was then forced to hand over his money, billfold and the keys to his car. Finally, when asked if he had been put in fear, Wright responded affirmatively. Thus, sufficient evidence exists to support a finding that Griffin used force in taking control of Wright's vehicle and that Griffin placed Wright in fear.

At trial, the evidence viewed in a light most favorable to the verdict indicates that Griffin knowingly or intentionally took Wright's vehicle from him by use of force or by placing Wright in fear.

## CONCLUSION

The trial court did not abuse its discretion when it denied Griffin's motion to correct errors, because no admissible evidence of the alternate juror's conduct was submitted in support of the motion. Further, the trial court did not abuse its discretion in denying the motion to correct errors with respect to the newly discovered evidence because Griffin failed to establish that due diligence would not have revealed the evidence prior to trial. We also find that the trial court committed harmless error when it refused to admit the testimony of Youngcourt. Finally, we find that sufficient evidence exists to support Griffin's conviction of carjacking.

Affirmed.

BAKER, J., concurs in Parts II, III and IV and concurs in result with opinion as to Part I.

KIRSCH, J., dissents with opinion.

BAKER, Judge, concurring in result.

Although I concur in Parts II, III and IV of my colleagues' opinion, I must respectfully concur in result as to Part I.

Whether an alternate juror improperly participated in a jury's deliberation can only established by those in the jury room. For this reason, Ind. Evidence Rule 606(b)(3) permits evidence to disclose "whether any outside influence was improperly brought to bear on any juror." Thus, I would allow consideration of the affidavits.

However, all this evidence only discloses that the defendant had the benefit of thirteen jurors rather than twelve. All twelve regular jurors agreed to the verdicts and, apparently, so also did the alternate. The defendant demonstrates no prejudice and, thus, may not impinge the trial court's judgment.

KIRSCH, Judge, dissenting.

I respectfully dissent.

The dispositive issue in this case is how we characterize the alleged improper participation in jury deliberations by the alternate juror. If such improper participation constitutes *ex parte* communication, then it falls clearly within the exception of Ind. Evidence Rule 606 which allows juror affidavits where "any outside influence was improperly brought to bear upon any juror." If the juror affidavits are admissible, they give rise to a presumption of prejudice. If the alleged improper participation does not constitute *ex parte* communication, then the exception does not apply.

I believe that the alleged improper participation by the alternate juror constitutes an *ex parte* communication with a deliberating jury, that the exception of Evid. R.

606 does apply, that the juror affidavits were admissible, that a presumption of prejudice was created, and that, here, not only was that presumption not rebutted, it was firmly established.

In *Smith v. Convenience Store Distrib. Co.*, 583 N.E.2d 735, 738 (Ind.1992), our supreme court said,

"Deliberation is the process by which the jury resolves the dispute before it on the basis of the evidence and instructions given in open court. Deliberations are to be free of extraneous influence so this purpose can be fulfilled. When this process is interrupted by an *ex parte* communication, the presumption is that the jury is influenced."

This court and our supreme court have repeatedly held that communications by trial judges, bailiffs and other court personnel to deliberating juries constitute *ex parte* communications giving rise to the presumption of prejudice. Indeed, a panel of this court recently held that a communication to a deliberating jury by one of Indiana's most learned and respected trial judges in responding to a jury question about whether it could hold a press conference after deliberations were completed constituted such an improper communication giving rise to a presumption of prejudice which was not rebutted. *See Rogers v. R.J. Reynolds Tobacco Co.*, 731 N.E.2d 36, 46 (Ind. Ct.App.2000).

If a communication by a learned trial judge with a deliberating jury is deemed to be *ex parte* and presumptively prejudicial, how can the improper participation by the alternate juror in deliberations be any less? This is especially true, where, as here, that communication comes at a time when the jury believes itself deadlocked. *Record* at 165, 180.

I would reverse Griffin's conviction and remand for a new trial.