**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 31 2013, 9:40 am

*Kevin S. Smith*

**CLERK**

of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JUNE E. BULES**
Plymouth, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ANTHONY EUGENE FIELDS,                )
                                  )
   Appellant-Defendant,          )
                                  )
      vs.           )   No.  50A05-1304-CR-186
                                  )
STATE OF INDIANA,                      )
                                  )
   Appellee-Plaintiff.           )

APPEAL FROM THE MARSHALL SUPERIOR COURT
The Honorable Robert O. Bowen, Judge
Cause No. 50D01-1206-FB-34

**December 31, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, after appellant-defendant Anthony Eugene Fields had violated the terms of his probation, his probation officer, accompanied by two Indiana State Police (ISP) Troopers and another probation officer, conducted a home visit and found evidence that Fields was manufacturing methamphetamine. Fields was subsequently convicted of Dealing in Methamphetamine,[1] a class B felony; Possession of Methamphetamine,[2] a class D felony; Possession of Precursors with Intent to Manufacture,[3] a class D felony; Maintaining a Common Nuisance,[4] a class D felony; and Possession of Paraphernalia,[5] a class A misdemeanor.

Fields now appeals his convictions and twenty-year sentence, arguing that the trial court erred by denying his motion to exclude a lab report and his motion for a continuance and that he was denied effective assistance of trial counsel. Fields also requests that this Court revise his sentence claiming that it is inappropriate in light of the nature of the offenses and his character. Finding no error and declining Fields's invitation to revise his sentence, we affirm the judgment of the trial court.

## FACTS

On June 14, 2012, James Bendy, a probation officer in Marshall County, conducted a home visit at Fields's residence in Plymouth. Fields had missed probation

---

[1] Ind. Code § 35-48-4-1.1.

[2] I.C. § 35-48-4-6.1.

[3] I.C. § 35-48-4-14.5.

[4] I.C. § 35-48-4-13.

[5] I.C. § 35-48-4-8.3(a)(1); I.C. § 35-48-4-8.3(b).

2

appointments, tested positive for drugs, and had purchased pseudoephedrine one day earlier. Two days before, Fields had attempted to purchase pseudoephedrine but was prevented from doing so because he had made a purchase on May 31, 2012. Additionally, the Indiana State Police (ISP) had received several complaints from Fields's neighbors about methamphetamine manufacturing waste in the area.

Bendy proceeded to Fields's residence with ISP Trooper Andrew Cochran, who was a member of the methamphetamine suppression unit, ISP Trooper Gruett and Ricardo Fallon, a Marshall County probation officer. As the four approached Fields's residence, Bendy saw Jacob Belcher standing outside. Belcher was also on probation and neither Belcher nor Fields was supposed to be associating with other probationers. From Trooper Cochran's vantage point, he saw Fields run from the driveway and around the backside of the residence.

Bendy and Trooper Gruett approached Belcher and spoke with him as Trooper Cochran conducted an exterior safety sweep. Trooper Cochran immediately observed a fallen bottle of Liquid Fire in the grass and two fifty-pound bags of rock salt by the backdoor, one of which was open. Trooper Cochran observed several coffee filters throughout the yard, a bag of coffee filters in the side yard, and a large burn pile directly behind the residence. When Trooper Cochran looked into the shed for additional people, he observed a syringe, a cotton ball, two bottle caps, and a wet coffee filter with methamphetamine, all of which are indicative of methamphetamine use. Trooper

3

Cochran called the drug task force for back up, and the probation home visit transformed into a police investigation.

Back at the residence, Fields responded to Bendy's knock at the front door. A subsequent search of the master bedroom revealed foil boats, which are used to smoke methamphetamine, foil strips, a roll of foil, and a butane torch. The master bathroom had pit marks or burn holes in the porcelain, which was consistent with the reaction from lithium batteries and water.

Belcher was charged with visiting a common nuisance for his presence at Fields's residence and was represented by Edward Ruiz. Belcher pleaded guilty and was sentenced on July 6, 2012, only ten days after he was charged.

On June 21, 2012, the State charged Fields with class B felony dealing in methamphetamine, class D felony possession of methamphetamine, class D felony possession of precursors with intent to manufacture, class D felony maintaining a common nuisance, and class A misdemeanor possession of paraphernalia. On July 3, Ruiz entered an appearance on Fields's behalf.

On October 16, 2012, Fields filed a motion to compel discovery within thirty days, which was granted. The specific language of that order stated that the State was compelled to provide undisclosed discovery within thirty days "or said discovery may be subject to suppression." Appellant's App. p. 23.

On December 20, 2012, Fields filed a motion to exclude evidence, and a hearing was held on January 9, 2013. Fields requested exclusion of a lab report, which he had

requested from the State but had not yet received. Fields did not allege any wrongdoing by the State, and the State assured the trial court that it would give a copy of the report to Fields as soon as the State received it. Consequently, the trial court denied Fields's motion until the final pretrial conference.

The lab report was issued on January 15, 2013, and given to Fields. At a subsequent hearing on January 31st, the trial court denied Fields's oral motion to continue the February 19, 2013 trial.

At trial, before the presentation of evidence, the trial court noted for the record that Ruiz had represented Belcher and that Belcher was going to be a State's witness and subject to cross-examination by Ruiz.

Belcher later testified that he was present at Fields's residence the day of the home visit. Belcher stated that although Fields was not manufacturing methamphetamine that day, Fields had done so before. During Belcher's direct testimony, Ruiz objected numerous times on the basis of Indiana Evidence Rule 404(b), which addresses the introduction of prior bad acts. During cross-examination, Ruiz questioned Belcher that because of the testimony that he was giving at Fields's trial, he could possibly receive a more favorable sentence in a pending case. Ruiz also impeached Belcher with prior inconsistent statements.

After the presentation of evidence and deliberations, the jury returned a verdict of guilty as charged. The trial court held a sentencing hearing on March 21, 2013. The trial court noted Fields's criminal history including seven convictions, two of which were

drug-related. In addition, Fields had failed to successfully complete probation with four instances of unsuccessful termination, and Fields was on probation at the time of the instant offense. In mitigation, the trial court recognized that Fields has children to support. Concluding that the aggravating factors outweighed the mitigating factors, the trial court sentenced Fields to twenty years for class B felony dealing in methamphetamine, to concurrent three-year terms on each of the three class D felonies, and to a concurrent one-year term for class A misdemeanor possession of paraphernalia, for a total aggregate term of twenty years in the Department of Correction (DOC). Fields now appeals.

## DISCUSSION AND DECISION

### I. Denial of Fields's Motions

### A. The Lab Report

Fields contends that the trial court erred by denying his motion to exclude the lab report from evidence. Trial courts have broad latitude with respect to discovery matters, and their rulings receive great deference on appeal. Cain v. State, 955 N.E.2d 714, 718 (Ind. 2011). Exclusion of evidence is appropriate only if the defendant shows "that the State's actions were deliberate or otherwise reprehensible, and this conduct prevented the defendant from receiving a fair trial." Warren v. State, 725 N.E.2d 828, 832 (Ind. 2000).

In this case, the lab report was issued on January 15, 2013, and the State promptly gave the report to Fields. Appellant's App. p. 6. Indeed, Fields admitted at the exclusion hearing that he was not alleging that the State had committed any wrongdoing or

6

impropriety. Tr. p. 4. Instead, Fields makes a general argument that he had "less than thirty (30) days" to prepare a defense and trial strategy. Appellant's Br. p. 12. However, Fields had from January 17th until February 19th to incorporate the lab report into the evidence that he already possessed and complete his trial preparation. Consequently, Fields also cannot show that he was denied a fair trial. See Ware v. State, 859 N.E.2d 708, 724 (Ind. Ct. App. 2007) (finding no prejudice with respect to an alleged discovery violation where the defendant's defense was not substantially affected and the evidence would not have assisted with any other line of defense). Thus, this argument fails.

### B. Motion for a Continuance

In a related argument, Fields argues that the trial court erred by denying his motion to continue the trial, which he orally made on January 31, 2013, at the pretrial conference. As an initial matter, the State points out that Fields has failed to provide this Court with a transcript of that hearing to support this argument. Indeed, it is the appellant's duty to present this Court with an adequate record that clearly shows the alleged error, and where he fails to adequately do so, the issue is deemed waived. Davis v. State, 935 N.E.2d 1215, 1217 (Ind. Ct. App. 2010).

Waiver notwithstanding, when a motion for a continuance is not based upon the statutory criteria in Indiana Code section 35-36-7-1,[6] the trial court's decision is given substantial deference and is reviewable only for an abuse of discretion. Laster v. State, 956 N.E.2d 187, 192 (Ind. Ct. App. 2011). In order for a denial of a motion for a

[6] Indiana Code section 35-36-7-1 criteria is based on the absence of evidence and the defendant's due diligence in trying to obtain it.

continuance to be reversible error, the defendant must demonstrate that he was prejudiced by the denial. Macklin v. State, 701 N.E.2d 1247, 1250 (Ind. Ct. App. 1998).

In this case, Fields requested a continuance several weeks before the trial and after the lab report had already been given to him. Under these circumstances, Fields has failed to show that he was prejudiced. Accordingly, this argument also fails.[7]

## II. Ineffective Assistance of Counsel

Fields asserts that he received ineffective assistance of trial counsel because he represented Belcher, who was charged with visiting a common nuisance for his presence at Fields's residence on June 14, 2012. In other words, Fields claims that his trial counsel's assistance was impaired by a conflict of interest.

To prevail on a conflict of interest claim, a defendant must show that trial counsel had an actual conflict of interest and that the conflict adversely effected counsel's performance. Shepherd v. State, 924 N.E.2d 1274, 1287 (Ind. Ct. App. 2010). An adverse effect requires a showing that of:

> (1) a plausible strategy or tactic that was not followed but might have been pursued; and (2) an inconsistency between that strategy or tactic and counsel's other loyalties, or that the alternate strategy or tactic was not undertaken due to the conflict.

Id.

---

[7] Fields vaguely references "field test results" that the State had not given to him during discovery. Appellant's Br. p. 12-13. Those field test results were admitted throughout Trooper Cochran's testimony and the State's photographs, and Fields does not claim that this witness and these photographs were not given to him during discovery. Moreover, Fields did not object when the evidence was presented at trial and makes no claim of fundamental error on appeal. Thus, there is no issue for this Court to address with respect to this argument.

Here, during cross-examination, Belcher admitted to having another charge for visiting a common nuisance in LaPorte County of which he had not been convicted as of Fields's trial. Tr. p. 69. Additionally, Belcher was on probation for theft and had a pending charge for theft in Marshall County. Id. Belcher then testified that if you violate your probation, "you could go to prison" and that it was possible that he would get some consideration for his testimony against Fields. Id. at 69-70. Belcher further testified that he did not see Fields manufacturing methamphetamine on June 14, 2012. Id. at 71-72

On redirect, Belcher testified that he had pleaded guilty to visiting a common nuisance, a charge arising from the same incident for which Fields was on trial. Id. at 72. Belcher stated that he was not promised anything in exchange for his guilty plea. Id. In light of this testimony, it appears that Fields has failed to show actual conflict, insofar as Belcher received no benefit from pleading guilty to visiting a common nuisance, which was the charge arising out of the same incident for which Fields was on trial. Moreover, any benefit Belcher received for his testimony was linked to unrelated charges and probation violations.

But perhaps even more compelling, because ineffective assistance of appellate counsel was asserted on direct appeal, we do not have a post-conviction record regarding whether Fields's attorney's representation of Belcher on the charge of visiting a common nuisance resulted in an actual agreement that Belcher testify against Fields for some benefit. A post-conviction proceeding is the preferred forum because of the development

9

of new evidence not present in the trial record. Woods v State, 701 N.E.2d 1208, 1219 (Ind. 1998). Rather, we only have Belcher's trial testimony.

Moreover, even assuming Fields had established an actual conflict of interest, he has failed to establish an adverse effect. More particularly, Belcher and Fields testified that methamphetamine was not manufactured on June 14, 2012, as alleged. Tr. p. 71, 172. Furthermore, Ruiz cross-examined Belcher, impeached his credibility, and objected to the admission of evidence during Belcher's direct examination. Tr. p. 60, 62, 64, 67. 70-72. Thus, it is apparent from the record that a strategy was followed. Accordingly, Fields has failed to show that he received ineffective assistance of trial counsel.[8]

### III. Appellate Review of Sentence

Finally, Fields argues that his twenty-year sentence is inappropriate in light of the nature of the offenses and his character and requests that this Court revise it pursuant to our authority under Indiana Appellate Rule 7(B). Upon reviewing the appropriateness of a sentence, we do not merely substitute our judgment for that of the trial court. Book v. State, 880 N.E.2d 1240, 1252 (Ind. Ct. App. 2008). Rather, after giving due consideration to the trial court's decision, our principal role "should be to attempt to leaven the outliers . . . ." Cardwell v. State, 895 N.E.2d 1219, 1223, 1225 (Ind. 2008). The burden is on the defendant to persuade us that his sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

---

[8] Because Fields had raised a claim of ineffective assistance of trial counsel on direct appeal, he cannot do so on post-conviction review. Woods v State, 701 N.E.2d 1208, 1220 (Ind. 1998).

10

Here, Fields was sentenced on each of his five convictions. However, his terms were ordered to be served concurrently such that his aggregate term of imprisonment is twenty years, which is the term he was sentenced to for class B felony dealing in methamphetamine. Appellant's App. p. 38.

As for the nature of the offenses, Fields was convicted of class B felony dealing in methamphetamine, class D felony possession of methamphetamine, class D felony possession of precursors, class D felony maintaining a common nuisance, and class A misdemeanor possession of paraphernalia. From these convictions, it is evident that Fields is heavily involved in methamphetamine, the dangers of which are common knowledge. Thus, the nature of the offenses does not assist Fields with his inappropriateness argument.

Regarding Fields's character, between 2003 and 2013, he has amassed seven criminal convictions, including four felony convictions and three misdemeanor convictions. Specifically, Fields has two drug-related felony convictions, namely, class D felony possession of marijuana and class D felony possession of methamphetamine. Appellant's App. p. 44. Additionally, Fields has been convicted of class D felony fraud and class D felony theft. Id. at 45. Fields has been placed on probation numerous times and has failed to successfully complete it even once. Id. at 46. Indeed, Fields was on probation when he committed the instant offenses. Id. It is apparent that Fields has a total disregard for the the rule of law and the criminal justice system. Consequently, his

twenty-year sentence is not inappropriate in light of the nature of the offenses and his character.

The judgment of the trial court is affirmed.

RILEY, J., and VAIDIK, J., concur.