## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 25 2017, 11:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carlos Menwell Arevalo, III, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | September 25, 2017 <br><br> Court of Appeals Case No. 48A05-1703-CR-532 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Thomas Newman, Jr., Judge <br><br> Trial Court Cause No. 48C03-1609-F4-1877 |

**Brown, Judge.**

[1] Carlos Menwell Arevalo, III, appeals his conviction for possession of methamphetamine as a level 4 felony. Arevalo raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction. We affirm.

*Facts and Procedural History*

[2] On July 29, 2016, Anderson Police Detective Keith Gaskill was looking for Arevalo as he was the subject of a warrant. Detective Gaskill found Arevalo seated in the rear passenger side of a van parked on the west side of a McDonald's parking lot along Scatterfield Road in Madison County, Indiana, and drove his vehicle to a parking space southeast of the van and radioed for assistance. While he waited, he observed two females in the front of the van conversing with two females standing outside the driver's side window.

[3] When assistance arrived, Detective Gaskill approached the passenger side of the van and observed the two females in the front seat sitting with their hands in their laps. He also observed that Arevalo was "kind of stooped over in the back behind the passenger side," with his head close to his knees, and "sort of bent . . . where [Detective Gaskill] could see the top of his head." Transcript at 68-69. Detective Gaskill opened the front passenger side door, identified himself as a police officer, and told the two seated females to keep their hands where he could see them, and they did so. Seconds later, he opened the rear sliding passenger door, Arevalo sat up and his "left hand slid out of [Detective Gaskill's] view," and Detective Gaskill asked Arevalo to "get his hands where [he] could see them." *Id.* at 70.

[4] Arevalo did not comply, at which point Detective Gaskill "grasped him by the right arm and . . . pulled him from the van." *Id.* Once outside of the van, Arevalo started to place his right hand in his jean pocket. Detective Gaskill turned Arevalo around and handcuffed him, asking why Arevalo was sticking his hand in his pocket. Arevalo responded that he had "fresh rigs in there."[1] *Id.* at 71. Not wanting "to take a chance on puncturing [his] hands," Detective Gaskill asked other officers who had arrived on the scene for puncture-resistant search gloves. *Id.* at 71-72. Officer Matthew Kopp replied that he had the gloves, Detective Gaskill turned Arevalo over to him, and Officer Kopp searched Arevalo and found ten syringes on him.

[5] Meanwhile, Detective Gaskill turned back to the two females seated in the front of the van, obtained their names and information, and asked another officer on the scene to search for any outstanding wants or warrants, and nothing was outstanding. The females' hands were immediately in front of Detective Gaskill for the entirety of the time he spoke to them.

[6] Detective Gaskill then searched the area inside the van where he had withdrawn Arevalo. He first observed an unfolded, zip lock bag containing methamphetamine "hanging out . . . of the seam between where the top part of [the] seat in front of [Arevalo] and where the bottom part meet," which was located in the "same place" as where Arevalo's head had been when Detective

---

[1] Detective Gaskill testified that he knew Arevalo "meant that he had syringes that were probably not used yet." Transcript at 71.

Gaskill had opened the door. *Id.* at 72-73. He then observed on the van floor next to the left side of the seat where Arevalo's "left hand [had] slid out of view" a syringe that had been "used or damaged" and "wasn't fresh." *Id.* at 73-74. Detective Gaskill last located a torn-off bottom of a soda can "right where [Arevalo's] feet were at immediately below his seat." *Id.* at 74.

[7] On September 12, 2016, the State charged Arevalo with possession of methamphetamine as a level 4 felony and unlawful possession of syringe as a level 6 felony. On December 13 and 14, 2016, a jury trial was held at which the jury heard testimony from, among others, Detective Gaskill and Officer Kopp. Detective Gaskill testified as to the significance of the torn-off bottom of a soda can "as an instrument that's used as part of a process for any injection intravenous injection of narcotics and other controlled substances." *Id.* He also testified that syringes could be used for the same thing. The jury found Arevalo guilty on both counts. The trial court sentenced Arevalo to eight years for possession of methamphetamine and to one year for unlawful possession of syringe to be served concurrently.

## *Discussion*

[8] The issue is whether the evidence is sufficient to sustain Arevalo's conviction for possession of methamphetamine as a level 4 felony.[2] When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge

---

[2] Arevalo does not challenge his conviction for unlawful possession of syringe as a level 6 felony.

the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

[9] Arevalo argues that the State did not prove he actually or constructively possessed the contraband located in the van. Specifically, he asserts that his possession of the van and the contraband therein was not exclusive because he was one of three people inside the van at the time Detective Gaskill observed and approached it. He also argues that the State did not demonstrate that he had knowledge of the drug's presence and nature, had control of the contraband, or had the intent to exclude others from such control.

[10] The State contends that sufficient evidence supports Arevalo's conviction and that he had constructive possession of the methamphetamine. Specifically, the State asserts that the testimony of Detective Gaskill, statements and actions of Arevalo, and the location of the drugs found at the scene support the inference that Arevalo had actual knowledge of the contraband's presence and illegal character and intended to maintain dominion and control over it.

[11] The offense of possession of methamphetamine is governed by Ind. Code § 35-48-4-6.1, which provides in part that a "person who, without a valid prescription or order of a practitioner acting in the course of the practitioner's professional practice, knowingly or intentionally possesses methamphetamine

(pure or adulterated) commits possession of methamphetamine." The offense is a level 4 felony if "the amount of the drug involved is at least ten (10) but less than twenty-eight (28) grams." Ind. Code § 35-48-4-6.1(c)(1).

[12] A conviction for possession of contraband may rest upon proof of either actual or constructive possession. *Washington v. State*, 902 N.E.2d 280, 288 (Ind. Ct. App. 2009) (citing *Macklin v. State*, 701 N.E.2d 1247, 1251 (Ind. Ct. App. 1998)), *trans. denied*. Constructive possession occurs when the defendant has actual knowledge of the presence and illegal character of the contraband and the capability and intent to maintain dominion and control over it. *Id.* To prove capability, the State must demonstrate that the defendant is able to reduce the contraband to his personal possession. *K.F. v. State*, 961 N.E.2d 501, 510 (Ind. Ct. App. 2012), *trans. denied*. To prove intent,

> the State must demonstrate the defendant's knowledge of the presence of the contraband. This knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances that point to the defendant's knowledge of the presence of the contraband.

*Id.* (citations omitted). These additional circumstances may include: (1) incriminating statements by the defendant; (2) flight or furtive gestures; (3) the defendant's proximity to the contraband; (4) the contraband being in plain view; or (5) the location of the contraband in close proximity to items owned by the defendant. *Id.*

[13] The evidence most favorable to Arevalo's conviction reveals that, when Detective Gaskill initially approached the van, Arevalo was stooped or bent over behind the passenger side seat with his head close to his knees and in the same place where the bag of methamphetamine was discovered by Detective Gaskill hanging out of a seam in the seat. Detective Gaskill observed the two females in the front seat with their hands in their laps and told them to keep their hands where he could see them, and they complied. Further, Arevalo sat up and slid his hand out of view when Detective Gaskill opened the rear van door. A used needle and torn-off soda can bottom, both of which Detective Gaskill testified were instruments of intravenous methamphetamine usage, were located near or below the seat in which Arevalo had been seated, and multiple unused syringes were found in his pocket, which Arevalo referred to as "fresh rigs." The trier of fact could reasonably infer from the evidence as set forth above and in the record that Arevalo had knowledge of the contraband as well as the capability and intent to maintain control over it.

[14] Based upon the record, we conclude that evidence of probative value exists from which the jury as trier of fact could find that Arevalo had constructive possession of the contraband and could have found him guilty beyond a reasonable doubt of possession of methamphetamine as a level 4 felony. *See Harper v. State*, 968 N.E.2d 843, 845 (Ind. Ct. App. 2012) (holding that the evidence was sufficient to prove that the defendant had constructive possession of contraband discovered in a purse and a motel room in light of the defendant's proximity to the contraband and his attempt to flee), *trans. denied.*

## *Conclusion*

[15]    For the foregoing reasons, we affirm Arevalo's conviction for possession of methamphetamine as a level 4 felony.

[16]    Affirmed.


Najam, J., and Kirsch, J., concur.